FILED

APR 1 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY CHUDNER,

                         Plaintiff,

        v.

TRANSUNION INTERACTIVE, INC., a
foreign corporation, and TRANSUNION
LLC, a foreign limited liability company,

                    Defendants.

Civ. No. 08-1103-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

    Currently before the court is Defendants TransUnion Interactive, Inc. ("TUI") and

FINDINGS AND RECOMMENDATION       1                      {KPR}

TransUnion LLC's ("TransUnion") (collectively "Defendants") Motion to Dismiss or Transfer for Improper Venue or, Alternatively, to Dismiss for Failure to State a Claim. Plaintiff Jeffrey Chudner ("Chudner") filed this class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure ("Rule") 23. Chudner alleges claims for relief for violations of the Oregon Unlawful Trade Practices Act, breach of contract, breach of the duty of good faith and fair dealing, and for equitable relief arising from unjust enrichment.

Defendants argue that this action should be dismissed for improper venue because the parties' agreement contained a forum selection clause providing for exclusive venue in Delaware. In the alternative, Defendants argue that the court should exercise its power to effect a discretionary transfer to an appropriate venue, consistent with the interests of justice. If the court declines to dismiss or transfer the case based on venue, Defendants argue that certain of Chudner's claims should be dismissed for failure to state a claim. Chudner opposes Defendants' motion because, he contends, venue is proper in Oregon, the forum selection clause is unenforceable, and each of his claims are adequately pled.

The court concludes that the forum selection renders venue in Oregon improper and, accordingly, Defendants' motion to dismiss for improper venue should be granted and the matter transferred to Delaware consistent with the forum selection clause.

*Factual Background*

On or about July 9, 2007, Chudner, a resident of Oregon, purchased a TrueCredit subscription from TUI on www.truecredit.com. (Declaration of Kate Anderson ("Anderson Decl.") ¶ 6.) TrueCredit is a service offering a credit report that purports to incorporate credit information from three national credit bureaus, namely TransUnion, Experian, and Equifax. *Id.* This service was

advertised on TUI's website.[1]  Individuals that purchase this service online at www.truecredit.com

"are first required to accept a Service Agreement, the terms of which are displayed on the website."

(Anderson Decl. ¶ 7.)  The "consumer[] must click an 'ACCEPT' button that follows the Service

Agreement in order for the transaction to be completed."  *Id.* at ¶ 8.  Chudner does not dispute that

he signed up for the service or that he accepted the Service Agreement.  He does, however, note that

he "was not given any opportunity to negotiate any aspect of the TrueCredit service."  (Declaration

of Jeffrey Chudner ("Chudner Decl.") ¶ 3.)

      The Service Agreement in use at the time Chudner signed up for the TrueCredit service stated

that Chudner was "legally bound by [its] terms[,]" and included a section titled "Applicable Law,"

which read:

> The laws applicable to the interpertation of these terms and conditions shall be the
> laws of the State of Delaware, USA, and applicable federal law, without any regard
> to any conflict of law provisions. . . .  You agree that any and all disputes arising
> under this Agreement or out of TrueCredit's provision of services to you, pursuant
> to this membership or otherwise, if submitted to a court of law shall be submitted to
> the state and federal courts of New Castle County, Delaware, USA.[2]

(Anderson Decl., Exhibit A at 1, 8.)  The Service Agreement appeared on the subscription screen

---

[1] The court agrees that both TUI and TransUnion should be bound by and benefit from the forum selection clause.  In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988), the court stated that a forum selection clause may apply to a non-party if the alleged conduct is sufficiently "closely related."  *See also Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997) ("Accordingly, the conduct of GTSI and Mr. Fuller are closely related [to] the contractual relationship between Mr. Graham and TPI, and the forum selection clause applies to both GTSI and Mr. Fuller in spite of the fact that they are not signatories to the PSA.")  Here, each claim asserted against TransUnion is directly related to the Service Agreement containing the forum selection clause and signed by TUI.  Thus, the conduct of TransUnion is at least closely related to the conduct of TUI and TUI's use of TransUnion credit ratings and TransUnion should be similarly bound by and benefit from the forum selection clause.

[2] The District Court for the District of Delaware is located in Wilmington, Delaware, the county seat of New Castle County.

FINDINGS AND RECOMMENDATION     3          {KPR}

in a window that displayed only six lines at a time.  (Chudner Decl. ¶ 10.)  Chudner asserts that he

was unable to expand this window and view the Service Agreement in a larger format.  *Id.* at ¶ 11.

As a result, to fully view the "Applicable Law" provision Chudner would have had to click the scroll

bar repeatedly.  *Id.* at ¶ 13.

In September 2007, Chudner discovered that "the TrueCredit scores attributed to Equifax and

Experian did not actually come from those consumer credit reporting agencies, but rather were

prepared by TransUnion, LLC." (Complaint ¶ 9.)  Chudner filed a civil action against Defendants

in the District of Oregon on September 22, 2008.

*Legal Standard*

The appropriate legal standard to apply to Defendants' motion to dismiss or transfer for

improper venue is seriously disputed.  Defendants argue that such motions are appropriately analyzed

as motions to dismiss under Rule 12(b)(3) and are subject to the analysis set forth by the Supreme

Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  Chudner argues that,

notwithstanding the forum selection clause, venue is proper in Oregon, and the motion should thus

be analyzed under the federal statue that governs venue, namely 28 U.S.C. § 1404(a) ("section

1404(a)").  Under section 1404(a) analysis, Chudner maintains, the forum selection clause is not

enforceable and venue is proper in the District of Oregon.

In *M/S Bremen*, the Supreme Court departed from its historical disfavor of forum selection

clauses and held that "such clauses are prima facie valid and should be enforced unless enforcement

is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10.  The Court's

holding was limited, however, to "federal district courts sitting in admiralty." *Id.*  Even so, the *M/S*

*Bremen* standard "has been widely applied to forum selection clauses in general." *Argueta v. Banco*

FINDINGS AND RECOMMENDATION        4                              {KPR}

*Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

Chudner's argument is premised on the analysis set forth in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). In *Stewart*, the Supreme Court drew a distinction between its holding in *M/S Bremen* and the appropriate standard to be applied when a federal diversity action is commenced in a venue that would be appropriate under the federal venue statute, although it does not comport with the contractually agreed upon forum. In this situation, the Court "held that a federal court sitting in diversity jurisdiction should treat a request to enforce a forum selection clause that permits venue in another federal district as a motion to transfer venue under the federal venue statute, the terms of which are set out in [section 1404(a)]." 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *FEDERAL PRACTICE AND PROCEDURE* § 3803.1 (3d ed. 2007) (hereinafter "*Wright & Miller* § 3803.1"). Because the current action is in diversity and the District of Oregon would, notwithstanding the forum selection clause, be an appropriate venue, Chudner argues that the court should proceed under *Stewart* and analyze Defendants' motion under section 1404(a), an approach that would make the forum selection clause only one of many factors for the court to consider.

The circuit courts are split as to whether a forum selection clause in a private contract can render venue in a particular venue improper. Allowing a forum selection clause to render an otherwise appropriate venue inappropriate, "seems improperly to place issues of federal law in the hands of private parties. The better analytical method, suggested by the Supreme Court in *Stewart*, is to determine the propriety of venue according to the federal venue statutes . . . ." *Wright & Miller* § 3803.1. Even so, the majority of circuit courts, including the Ninth Circuit, "nevertheless have held that a valid forum selection clause can render venue in the original forum improper; these courts

enforce valid clauses under Section 1406(a) or a Rule 12(b)(3) motion to dismiss for improper venue." *Id.*

The court is sympathetic to Chudner's position that *Stewart* appears to mandate the approach endorsed by *Wright & Miller* § 3803.1. However, this court is bound by Ninth Circuit precedent that holds to the contrary. In *Argueta,* 87 F.3d at 324, the Ninth Circuit analyzed the defendants' motion to dismiss or transfer for improper venue based on a forum selection clause in an international agreement "as a Rule 12(b)(3) motion to dismiss for improper venue." *See also Spradlin v. Lear Siegler Management Servs. Co.*, 926 F.2d 865, 866 (9th Cir. 1991) (in a federal diversity action involving an clause designating forum in Saudi Arabia, the Ninth Circuit affirmed the district court's "dismissal of [Spradlin's] action for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3)."); *see also Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (analyzing the defendant's motion to enforce forum selection clause under 12(b)(3) in a federal diversity action).

With respect to diversity actions where a forum selection clause is at issue, courts in this district have consistently analyzed motions to dismiss for improper venue under Rule 12(b)(3) as well. In *Freightliner LLC v. J.G. Trading, Inc.*, 06-CV-1595-ST, 2007 WL 2029067 (D. Or. July 10, 2007), the court analyzed a "choice of forum clause" under the Ninth Circuit's framework in *Argueta* and *Murphy*, both of which adopt the *M/S Bremen* framework. *Id.* at *2. In a recent decision, then Chief Judge Haggerty considered whether a case properly removed to federal court under 28 U.S.C. § 1441 could subsequently be dismissed pursuant to Rule 12(b)(3) for improper venue. *Premier Jets, Inc. v. AlliedSignal, Inc.*, No. 08-142-HA, 2008 U.S. Dist. LEXIS 32596, at *5-6 (D. Or. Apr. 21, 2008). Judge Haggerty concluded that such dismissal was proper. *See id.*, at

*9-10 ("Although it did not explicitly address the *Kerobo*[3] theory, the Ninth Circuit has affirmed the dismissal of a case based on improper venue under a forum selection clause after the case was removed under § 1441(a)." (citing *Spradlin*, 926 F.2d 865)); *see also Barhyte Specialty Foods, Inc. v. Accutek Packaging Equipment Co.*, No. 07-855-JE, 2007 U.S. Dist. LEXIS 64409, at *7 (D. Or. Aug. 28, 2007) ("In actions such as this, which are based upon diversity of the parties' citizenship, the interpretation and enforcement of forum selection clauses are questions of federal law. In analyzing a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court must draw all reasonable inferences in favor of the non-moving party, and must resolve all factual issues in that party's favor." (internal citations omitted)).

Based on the above analysis and in recognition of established Ninth Circuit precedent, the court analyzes Defendants' motion to dismiss as a motion to dismiss for improper venue under Rule 12(b)(3). Accordingly, "the pleadings need not be accepted as true . . . and the court may consider facts outside of the pleadings." *Murphy*, 362 F.3d at 1137 (internal citations omitted). The court also must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party . . . ." *Id.* at 1138.

### Discussion

1.    Enforceability of the Forum Selection Clause

In *M/S Bremen*, the Supreme Court held that forum selection clauses "are prima facie valid

---

[3] *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531 (6th Cir. 2002) is a Sixth Circuit opinion that adopted the *Stewart* approach and reversed the district court's dismissal for improper venue under Rule 12(b)(3), remanding the case for analysis consistent with *Stewart* and 28 U.S.C. § 1404(a) . However, this case "is contrary to Ninth Circuit law and does not bind this court." *Waters v. Advent Prod. Dev.*, No. 07-2089 BTM(LSP), 2008 U.S. Dist. LEXIS 50686, at *18-19 (S.D. Cal. June 26, 2008).

and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10. The Court explained that a forum selection clause should be enforced unless the non-moving party "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15. The exceptions set forth in *M/S Bremen* have been narrowly construed. *Argueta*, 87 F.3d at 325. To be deemed unenforceable, a forum selection clause must fall into at least one of three categories:

> A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

*Id.* (internal citations and quotations omitted).

Chudner contends that the forum selection clause contained in the Service Agreement is unenforceable on each of the three grounds. First, the inclusion of the forum selection clause in the contract was the result of fraud and overreaching resulting from unequal bargaining power and inconspicuous terms. Second, enforcement of the clause will effectively deprive Chudner of his day in court because he will be forced to litigate his action in Delaware. Third, enforcement of the forum selection clause is contrary to Oregon's public policy regarding consumer contracts. The court will address each argument in turn.

   *a.    Fraud and Overreaching*

Chudner argues that inclusion of the forum selection clause should be deemed unconscionable for fraud or overreaching because, first, the parties did not have equal bargaining

power; second, Chudner had no opportunity to negotiate the terms of the contract; and third, the forum selection clause was included in the contract in such a way as to surprise consumers. Chudner fails to meet his burden on each point.

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991), the Supreme Court held that the inclusion of forum selection clauses in form contracts where the parties have unequal bargaining power is permissible, depending on the facts and circumstances at hand. The Court reasoned that forum selection clauses "ha[ve] the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense," involved in litigating the question of appropriate forum. *Id.* at 593-94. However, such clauses "are subject to judicial scrutiny for fundamental fairness." *Id.* at 595. Form contracts entered into on the Internet are not treated differently from traditional form contracts. *See Cairo, Inc. v. Crossmedia Servs.*, No. C 04-04825 JW, 2005 U.S. Dist. LEXIS 8450, at *12 (N.D. Cal. Apr. 1, 2005) (upholding a forum selection clause in an Internet form contract and noting: "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d. Cir. 2004))).

Contrary to Chudner's argument, a non-negotiable form contract where the parties have unequal bargaining power is not presumptively invalid. *See Panetta v. SAP Am., Inc.*, 2005 U.S. Dist. LEXIS 36813, at *9-10 (N.D. Cal. July 26, 2005) ("'[T]ake it or leave it' adhesion contracts do not necessarily render a forum-selection clause unenforceable. These agreements are enforceable as long as they are not 'unreasonable.'" (internal citations omitted) (citing *Carnival Cruise Lines*, 499 U.S. at 593-94; *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998))). Chudner

provides no analysis as to why this form contract should be treated differently. His allegation that the contract was the result of unequal bargaining power and no negotiation is insufficient to establish that the forum selection clause is void for fundamental fairness.

Chudner argues that the TrueCredit forum selection clause was a surprise to consumers, because it was contained in a small text-box that required the consumer to scroll down repeatedly to read it in full. *See* Chudner Decl. ¶ 13 ("I scrolled through the text of the Service Agreement looking for the clause that purports to require litigation of claims in Delaware. In order to find that text I had to click approximately 48 times on the scroll bar."). Although Chudner contends that this renders the forum selection clause hidden and, thus, unenforceable, that fact is simply insufficient to render the forum selection clause invalid due to surprise. Furthermore, the Service Agreement is fully accessible in its entirety from Defendants' website home page, under "Terms of Use." Chudner offers no other rationale upon which to find that the clause's inclusion was fundamentally unfair.

b.    *Whether Chudner will be Deprived of His Day in Court*

Chudner argues that the court will deprive him of his day in court should it require him to litigate in a forum "thousands of miles away." (Plaintiff's Opposition Brief ("Pl.'s Opp. Br.") 17.) The standard set forth in *M/S Bremen* requires the non-movant to demonstrate that litigation in the contractually chosen venue would be "gravely difficult and inconvenient." 407 U.S. at 18. This standard presents a heavy burden for the non-movant, as cases in this circuit amply demonstrate. In *Argueta v. Banco Mexicano, S.A.*, Argueta, the non-movant, argued that enforcement of the otherwise valid forum selection clause would effectively deny him his day in court by requiring the litigation take place in Mexico. Prior to filing the action, Argueta met with Banco Mexicano, the

FINDINGS AND RECOMMENDATION        10                              {KPR}

defendant, at which time he was seized, interrogated, and ultimately confined by the Mexican government for over a year. He feared that a return to Mexico, pursuant to the forum selection clause, would mean another arrest or an unfair hearing. The Ninth Circuit affirmed the district court's enforcement of the forum selection clause because Argueta had not proven that "litigation in Mexico would subject Argueta to risk of physical harm or that Argueta [was] unable to obtain counsel to represent him in Mexico." *Id.* at 327. Argueta's circumstances, though clearly more challenging than Chudner's, did not bar enforcement of the forum selection clause.

In *Spradlin*, another Ninth Circuit decision, the plaintiff was employed by a military contractor incorporated in Delaware and headquartered in Oklahoma. Pursuant to his employment in Saudi Arabia, Spradlin entered into an employment agreement with a clause providing that "[t]he courts of Saudi Arabia shall have sole jurisdiction over any disputes arising out of this Employment Agreement." *Id.* at 866. The Ninth Circuit affirmed the district court's enforcement of the clause in part because Spradlin's allegations of inconvenience regarding the difficulty and expense of travel to Saudi Arabia were insufficient to demonstrate that Spradlin would be deprived of his day in court.

The arguments of the plaintiff in *Premier Jets v. AlliedSignal Inc.* bear a greater similarity to Chudner's position in this case. Premier Jets claimed, essentially, that it would be deprived of its day in court because "it would be more expensive and inconvenient for the case to be litigated in [the contractual forum]." The court disagreed, first, because Arizona, the contractual forum, was not a "particularly distant or foreign forum[;]" second, because counsel with expertise in Oregon law could still appear as counsel in Arizona if admitted pro hac vice; and third, because the expense of litigating in Arizona would be minimal in relation to the claimed damages. Here, the same factors apply. First, Delaware is not a particularly remote or foreign forum; though it may require a few

more hours of travel, it is not significantly more inconvenient or expensive to travel to Delaware than a state nearer to Oregon. Second, current counsel may be permitted to proceed pro hac vice and litigate the case in Delaware themselves, if Chudner so desires. Third, the action is intended to proceed as a class action; although any one potential plaintiff's damages are small, collectively the potential damage award should render the increased costs associated with travel to Delaware de minimis as well. Fourth, the court notes that, in the age of electronic filing, a substantial portion of litigation can take place anywhere a party has access to the Internet. *See Pratt v. Silversea Cruises, Ltd.*, No. C 05-0693 SI, 2005 U.S. Dist. LEXIS 14339, at *12 (N.D. Cal. July 13, 2005) (noting that "the availability of electronic filing and video and teleconferencing technology limits the need for travel. In addition, in civil case[s], a plaintiff may pursue a claim without appearing in court in person.").

The whole of Chudner's argument on this point is that "it makes little sense to require an Oregon plaintiff to 'spend the time and risk the expense necessary to' litigate his claim thousands of miles away particularly in light of Oregon's stated public policy against such a requirement." (Pl.'s Opp. Br. 17 (citing *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 571, 152 P.3d 940 (2007)).) Chudner has established only that, for him, a transfer to Delaware will be more inconvenient and expensive. This is insufficient to invalidate a forum selection clause. *See Pratt*, 2005 U.S. Dist. 14339, at *11-12 ("To meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an impossibility for her to try her case, not simply a less convenient or effective means of doing so.") Chudner has not established that he will be deprived of his day in court if the forum selection clause is enforced.

//

FINDINGS AND RECOMMENDATION        12                        {KPR}

c. *Oregon Public Policy*

Chudner cites ORS 81.150 in support of his contention that Oregon has a strong public policy precluding enforcement of the forum selection clause.  Under this statute, "[a] consumer may revoke a provision in a consumer contract that requires the consumer to assert a claim against the other party to the contract, or respond to a claim by the other party to the contract, in a forum that is not in this state."  OR. REV. STAT. 81.150(2) (2007).  Chudner, who entered into his agreement in 2007, acknowledges that this provision applies only to consumer contracts entered into after January 1, 2008, but argues that in passing this law "the Oregon Legislature announced a clear policy in favor of allowing Oregon consumers to litigate consumer complaints in Oregon courts."  (Pl.'s Opp. Br. 13.)  Although not made explicit, Chudner's argument is that the court should recognize the now codified public policy against consumer contract forum selection clauses and apply it retroactively to cover a contract entered into prior to the date the statute became effective.

Chudner relies heavily on *Vasquez-Lopez*, 210 Or. App. 553.  In *Vasquez-Lopez*, the defendant mortgage company was accused of "engag[ing] in predatory lending practices" and fraudulent inducement.  *Id.* at 556.  The defendant moved "to compel arbitration pursuant to an arbitration rider to the loan contract, but the trial court denied the motion on the ground that the arbitration rider was unconscionable."  *Id.*  The Oregon Court of Appeals affirmed the trial court's decision, finding both procedural and substantive unconscionability at play.  In its opinion, the court outlined unconscionabiltiy analysis under Oregon law.  This analysis is inapplicable here, however, as the general rule states that "[f]ederal law governs the validity of a forum selection clause."  *Argueta*, 87 F.3d at 324.  Although the public policy of the "forum in which the suit is brought," is relevant to the enforceability analysis, the standards for unconscionability under Oregon law are

themselves inapplicable to this court's determination.

In essence, ORS 81.150 makes forum selection clauses in consumer contracts unenforceable in Oregon, where the consumer was a resident of Oregon at the time the contract was formed, so long as the consumer revokes the clause, in writing, within a reasonable time after the dispute arises. However, this statute is unavailable to Chudner, as the contract in question was formed prior to January 1, 2008, the effective date of ORS 81.150.  Chudner argues that, although the statute does not strictly apply to his contract with Defendants, the public policy it announces should still be applied to bar enforcement of the forum selection clause.

The court does not agree that the public policy announced by ORS 81.150 is retroactively applicable to the present case.  To the extent that ORS 81.150 stands for Oregon's disapproval of forum selection clauses in consumer contracts, the statute, and thus the public policy it represents, was not formally in place until 2008.  The court declines to retroactively modify the terms of a contract entered into under a particular legal framework to comply with a statement of public policy announced after that contract's formation.  This would be contrary to principles of contract law, as it would deprive Defendants of one of the benefits for which they bargained.  To do so also would undermine the statute itself, which the Oregon legislature made effective on a specific date. Therefore, enforcement of the parties' 2007 agreement, including its forum selection provision, is not contrary to public policy and, for all the reasons stated, should be enforced.

2.    Dismissal or Transfer

Rather than dismiss an action where venue is improper, the court may exercise its discretionary power to transfer the action pursuant to 28 U.S.C. § 1406.  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it

FINDINGS AND RECOMMENDATION        14                    {KPR}

be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2007). The court must decide whether it is in the interests of justice to dismiss the action without prejudice or transfer it to the appropriate venue, in this case, the United States District Court for the District of Delaware. The court concludes that the interests of justice are best served by transfer to the District of Delaware, consistent with the venue provision in the Security Agreement.

Because Defendants' motion to dismiss for improper venue under Rule 12(b)(3) is dispositive in this matter, the court need not perform analysis pursuant to 28 U.S.C. § 1404(a) or Rule 12(b)(6). Defendants' motion to dismiss for failure to state a claim is therefore denied as moot with leave to refile in the appropriate venue.

*Conclusion*

For the reasons above stated, Defendants' motion should be granted and the action at bar should be transferred to the District of Delaware.

//

//

//

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than April 27, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when

FINDINGS AND RECOMMENDATION        15                                    {KPR}

the response is due or filed, whichever date is earlier.

DATED this 13th day of April, 2009.

JOHN V. ACOSTA
United States Magistrate Judge